**Michael I. MONUS, Appellant,**

v.

**Thomas D. LAMBROS,
et al., Appellees.**

No. 4:01CV211.
Bankruptcy No. 92–41883.

United States District Court,
N.D. Ohio.

Sept. 17, 2002.

Michael I. Monus, Lisbon, OH, Pro se.

Harry Wright, IV, Columbus, OH, Jeffrey T. Heintz, Brouse McDowell, Akron, OH, Henry J. Riordan, United States Department of Justice, Tax Division, Washington, DC, for Thomas D. Lambros, Trustee, Official Creditors Committee, United States of America.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is an Appeal by the Debtor, *pro se*, from a final judgment of the United States Bankruptcy Court for the Northern

District of Ohio entered by the Honorable William T. Bodoh on October 30, 2000, in Bankruptcy Case No. 92–41883, and captioned the "Agreed Order Allowing the Internal Revenue Service's ('I.R.S.') Pre-Petition Claims" ("Agreed Settlement Order")(Dkt. # 963–1).

The Debtor states in his Brief that, "The issue on appeal is based upon Judge Bodoh not making a timely referral of the alleged perjury of Pat Finn that impacts the administration of the bankruptcy case and all other priority creditors behind the I.R.S." Brief at p. 1. The Debtor asks this Court to vacate the Agreed Settlement Order between the Trustee, Thomas D. Lambros, and the United States, and to remand this matter to the Bankruptcy Court in order that Judge Bodoh may: (1) refer the Debtor's allegations of perjury against Pat Finn to the United States Attorneys Office pursuant to 18 U.S.C. § 3057; (2) allow the proper 2004 exams necessary to complete the Debtor's objection to the I.R.S. claims; and (3) conduct a formal hearing concerning the Debtor's objections to the I.R.S. claim.

■ This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). The Court reviews the Bankruptcy Court's findings of fact using the clearly erroneous standard and its conclusions of law *de novo*. *Industrial Equipment Co. v. Emerson Electric Co.,* 554 F.2d 276 (6th Cir.1977).

### Procedural History

On September 25, 1992, the Debtor commenced a bankruptcy case by filing a petition under Chapter 11 of the Bankruptcy Code (11 U.S.C.). *See* Bankr.Docket Entry No. 1. The case was converted to a case under Chapter 7 of the Bankruptcy Code on June 14, 1995. *See* Bankr.Docket Entry No. 507. Lambros was then appointed as the Chapter 7 trustee ("the Trustee"). *See* Bankr.Docket Entry No. 512.

On February 4, 1997, the Debtor filed a Motion for Examination of Patrick Finn, the former Chief Financial Officer of Phar–Mor and a cooperating government witness in his criminal trial, under Bankruptcy Rule 2004. *See* Bankr.Docket Entry No. 725. On February 19, 1997, the Bankruptcy Court granted the Debtor's motion, and the examination was ultimately scheduled for March 17, 1997. *See* Bankr.Docket Entry Nos. 735, 741. According to the Debtor, Finn's examination lasted approximately one day, and, then, on March 25, 1997, the Debtor filed a Motion to Compel Finn's attendance at the previously-ordered examination. Two days later, the Bankruptcy Court entered an Order Temporarily Denying the Debtor's Motion to Compel. *See* Bankr.Docket Entry No. 750.

In preparation for the 2004 examination at issue, the Debtor claims that he received, for the first time, documents in Finn's own handwriting from the records room at Phar–Mor and also from the United States Attorney's Office. The Debtor contends that the documents reveal that Finn's testimony in the 2004 exam was untruthful, and that this testimony impacted the administration of the Debtor's estate as it relates to substantial priority I.R.S. tax claims.

As a result, on July 14, 1997, the Debtor filed his Motion to Suspend and Stay All Actions with the Exception of Those Actions that concern Administrative Expenses of both the Chapter 11 and 7 Bankruptcy ("the motion to stay"). *See* Bankr.Docket Entry No. 781. In the motion to stay, the Debtor moved the Court for an Order permitting him to continue the examination of Finn as well as an Order appointing special counsel to investi-

gate Finn's alleged perjury at the first day of the exam.

At a hearing on the motion, conducted on December 16, 1997, the Court stated:

The purpose of this proceeding is to consider the motion of [the Debtor] to suspend and stay actions in this Chapter 7 proceeding with the exception of actions that concern administrative expenses in both the converted Chapter 11 and the Chapter 7 bankruptcy. Specifically, [the Debtor] asks two things.

First, that the actions be stayed until such time as the court, I take it, reverses its prior ruling to permit the Debtor to continue Rule 2004 examinations with respect to the administration of the estate, and there is a request of [the Debtor] to appoint special counsel to investigate certain claims of perjury.

I have reviewed first of all, 18 U.S.C. § 1621. That it the general perjury statute. The appointment of special counsel to investigate criminal actions is outside the authority of this Court; however, 18 U.S.C. § 3057[1] specifically mandates that any judge having reasonable grounds for believing that there are violations of Chapter 9 of Title 18 or other laws of the United States with respect to cases before it—and I'm now quoting the statute—"shall report to the appropriate United States Attorney all the facts of the case."

And Section B of 18 U.S.C. § 3057 then says, the United States Attorney thereupon shall inquire into the facts and report to the judge. And if it appears that an offense has been committed, shall, without delay, present the matter to the grand jury, et cetera.

On the second leg of [the Debtor's] Motion, then asking me to appoint a special counsel, taking his Motion as a Motion to invoke 18 U.S.C. § 3057, I think [the Debtor's] Motion is well taken and it is sustained.

The Court shall promptly, after the conclusion of proceedings today, report to the United States Attorney for this district the facts related in [the Debtor's] motion and the exhibits, and suggest to the United States Attorney that they investigate whether a violation of 18 U.S.C. § 1621 has been committed.

Mr. Monus, I take it in sustaining your motion and doing what is incumbent upon me by law to do that, that gets to the specific point that you sought to raise in the second part of your motion.

Transcript of 12/16/97 Hearing at pp. 2–3. However, the Bankruptcy Court denied the first leg of the Debtor's motion, that is,

---

1. 18 U.S.C. § 3057 states, in its entirety:

   (a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

   (b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

   18 U.S.C. § 3057 (1978).

his request to continue the 2004 examination of Finn.

On February 28, 2000, pursuant to 11 U.S.C. § 502, the I.R.S. filed an proof of claim, as amended, in the amount of $3,865,019.94. *See* Bankr.Docket Entry No. 953, Gov. Exh. 1. The proof of claim involved the debtor's 1988, 1990, and 1991 federal taxes. The claims for the 1990 and 1991 years were based upon notices of deficiency (*See* 26 U.S.C. § 6213) issued by the I.R.S. *See* Bankr.Docket Entry No. 953, Gov. Exhs. 2 and 3.

The Debtor wrote a letter to Judge Bodoh, dated August 4, 2000, requesting an update concerning the referral to the Justice Department, since this information would be used in the Debtor's objections to the I.R.S. claims. On August 8, 2000, the Trustee filed a limited objection to the allowance of the United States' proof of claim based upon the adequacy of the government's documentation of the claim (the "Trustee's Objection"). *See* Bankr.Docket Entry No. 948. The Trustee served the "Notice Of Objection To Claim" on the Debtor and all creditors. *See* Bankr.Docket Entry No. 948. On September 6, 2000, the United States filed an opposition to the Trustee's Objection. *See* Bankr.Docket Entry No. 953.

On September 14, 2000, the Clerk of the Bankruptcy Court issued a "Notice Of Hearing" for the Trustee's Objection. *See* Bankr.Marginal Docket Entry for 09/14/00. The hearing was scheduled for October 25, 2000. *See* Bankr.Marginal Docket Entry for 09/14/00. According to the Debtor, his wife was informed by the bankruptcy Court that the letter would be used as the Debtor's objection.

Just prior to the October 25th hearing, however, the government provided additional documentation to the Trustee in support of the I.R.S. claim, and, consequently, the Trustee conceded that the United States' proof of claim, as amended, should be allowed under 11 U.S.C. § 502. The parties informed the Clerk that they had resolved the Trustee's Objection. The Bankruptcy Court held a telephone hearing on October 23, 2000, during which the Bankruptcy Court approved of the Trustee's concession and instructed the parties to submit an agreed judgment entry. During the telephone hearing, Judge Bodoh informed the parties that the court had received a letter from the Debtor requesting guidance, and that the agreed judgment entry should state that it did not prejudice the rights of the debtor, as those rights exist under applicable non-bankruptcy law.

The Debtor provides the following summary of the hearing conducted on October 25,2000:

1. Judge Bodoh informed Debtor that the IRS and the Trustee had settled the part of the claim that had to do with the assets of the estate of the Debtor;

2. Judge Bodoh indicated he no longer had jurisdiction since the Trustee settled with the IRS;

3. He said my objection was now mute [sic];

4. He indicated he would now (some three years later) refer to the U.S. Attorney's Office the possibility of perjury committed by Pat Finn;

5. Debtor reiterated the facts as he knew them;

6. Debtor said he would appeal the settlement as soon as he received it;

7. The Attorney for the Trustee and the IRS were not present at the hearing for Debtor;

8. Judge Bodoh ended the hearing by saying again he would refer to the U.S.

Attorney's Office the matter of Patrick Finn's testimony.

Brief at p. 4.

Pursuant to the October 23rd telephone hearing, the Trustee and the government submitted the agreed judgment entry. On October 30, 2000, the Bankruptcy Court entered the Agreed Settlement Order. Bankr.Docket Entry No. 963. The judgment allowed the United States' proof of claim, as amended, and found that the "basis of the Trustee's objection was a lack of documentation as to the portion of the claim which represents the 1990 and 1991 tax periods," but that the United States "supplied the Trustee with documentation to support its claim regarding the 1990 and 1991 tax periods." The judgment also included the following paragraph:

> Notice was given to all parties in interest of the Trustee's objection to the Internal Revenue Service's claim and the Internal Revenue Service filed an opposition. Other parties in interest had thirty (30) days in which to file an opposition to the objection and request a hearing. Mr. Michael I. Monus (the "Debtor") wrote a letter to the Court requesting guidance regarding this matter. This Agreed Order does not prejudice the right of the Debtor, as those rights exist under applicable non-bankruptcy law.

Bankr.Docket Entry No. 963, pp. 1–2.

In this *pro se* appeal, the Debtor contends that Judge Bodoh's failure to refer the Finn allegations to the Justice Department prevented him from asserting a successful objection to the I.R.S. claim.

### Standing

■ As an initial matter, the Appellees argue that the Debtor does not have standing to challenge the Agreed Settlement Order. Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith. *In re Troutman Enterprises, Inc.,* 286 F.3d 359, 364 (6th Cir.2002) (*Citing In re PWS Holding Corp.,* 228 F.3d 224, 248 (3d Cir.2000)). In order to appeal a bankruptcy court's order, a litigant must qualify as a "person aggrieved" by the order. *Morgenstern v. Revco D.S., Inc.,* 898 F.2d 498, 499 (6th Cir.1990)

■■ A "person aggrieved" by a bankruptcy order must demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights. *Fidelity Bank v. M.M. Group, Inc.,* 77 F.3d 880, 882 (6th Cir.1996). Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order. *Id.* at 882.

■ "Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." *In re Cult Awareness Network, Inc.,* 151 F.3d 605, 607 (7th Cir.1998). Therefore, a debtor is not a person aggrieved by a bankruptcy court order affecting the administration of the estate "[u]nless the estate is solvent and excess will eventually go to the debtor or unless the matter involves rights unique to the debtor." *In re Weston,* 18 F.3d 860, 863–64 (10th Cir.1994) ( the debtor lacked standing to appeal an order upholding the election of a Chapter 7 trustee). The second exception would include orders that affected "the terms, conditions and extent of a debtor's discharge." *In re El San Juan Hotel,* 809 F.2d at 155 n. 6; *See also Weston,* 18 F.3d at 864 n. 3.

The Debtor points out in his Reply brief that, in the case *sub judice,* the I.R.S. claim is for taxes related to income.

Therefore, the taxes are subject to exception from the bankruptcy discharge. 11 U.S.C. § 523(a)(1). In *Abel v. Campbell*, 334 F.2d 339, 341 (5th Cir.1964), the Fifth Circuit held that a debtor had standing to challenge the merits of his liability for certain taxes because he would remain liable for those taxes after the bankruptcy proceeding. Similarly in *Menick v. Hoffman*, 205 F.2d 365, 366–67 (9th Cir.1953), the Ninth Circuit allowed a debtor to seek review of the bankruptcy court's decision to refuse an untimely filed I.R.S. claim which, if not settled during the bankruptcy proceeding, would become the debtor's responsibility post-bankruptcy.

■ However, as the Appellees point out in their Briefs, the Agreed Settlement Order contains a provision which states that, "This Agreed Order does not prejudice the right of the Debtor, as those rights exist under applicable non-bankruptcy law." Insofar as the Order allows the Debtor to challenge the tax assessment outside of the Chapter 11 proceedings, it is the opinion of this Court that the Debtor is not a "person aggrieved" as that term is defined in relevant Sixth Circuit law, and, therefore, does not have standing to appeal the Agreed Settlement Order.

### Finn's Testimony

However, even assuming *arguendo* that the Debtor has standing to appeal the Agreed Settlement Order, it is the opinion of this Court that Judge Bodoh's failure to refer the Finn allegations to the Justice Department after the December 16, 1997 hearing did not impair the Debtor's ability to challenge the I.R.S. claim.

At the hearing on his motion to stay, the Debtor based his allegations of perjury against Finn on a three page memo, dated April 4, 1988, from Finn to Charity Imbray in which Finn calculates the Debtor's salary for 1988 and 1989. The Debtor contends that these calculations reveal that Finn was capable of calculating the Debtor's salary without relying on the company prospectus. According to the Debtor, because Finn testified that the prospectus was the only tool upon which Finn could rely to calculate the Debtor's salary, Finn perjured himself at both the 2004 examination and the criminal trial:

> I want to make you privy to one thing, previous to you going to the U.S. Attorney's office so that you understand fully what I'm talking about here...I had not seen Exhibit B. *I had not seen Page 1, 2, and Page 3.* I had seen the other pages, and were also—the next—the 4,5,6 and 7 were exhibits that I used in—were exhibits that I used in my criminal—my second criminal trial...

> Obviously, there was, at a minimum, written communication between Charity Embray [sic] and Pat Finn on April 4, 1988...of which the second page of this then determines my salary compensation ...

> The 6/5 date is either the date of the board meeting or the day before the Phar–Mor board meeting. That's the significance of this date. So the—so all of the testimony that has come in relative to [Finn] saying the only way he knew what my salary was was by the prospectus for what was an after fact thing and that he would have no conversation or contact either with the board or Charity Embray [sic] who was the secretary of the board and general counsel for Phar-mor is absolutely nonsense. But I didn't have a record all the way through previous to that to show that...So if you would start from the beginning all the way back to 1988, you can clearly see that on the salary portion of my entire compensation package [Finn] was involved in every transaction and was in contact with (inaudible)

from '88 all the way through a minimum of 1991...

[M]y salary was determined by the board of directors. Finn was aware of it when it was determined. And we have this record that says, well, no one knew what it was. So the only way we could determine it is by looking at the prospectus...

And that's where the testimony comes from. In addition to that, although probably back (inaudible) that the only way he knew what my salary was was to look at the prospectus and that he also states that he did know that I had an employment agreement, which you can see in the motion that I—that everyone knew that I operate under that employment agreement and what the terms and conditions of that employment agreement was.

And if I can take the right people through the right testimony, which may have to also include myself on this issue, you will see that when it was determined to—the embezzlement was a manner in which I was paid my salary compensation reimbursement, et cetera, since I started my—since I started in my business career at the Tamarkin Company in 1969. And it didn't change until I was terminated.

And we have testimony here that does not state the truthful facts. And in the limited testimony with [Finn] when we keep trying to ask him, as you can see in this deposition, did you ever talk to—did you ever talk to counsel about making (inaudible) continued to say the only way I could answer that question is as it related to the prospectus.

Transcript of December 16, 1997 hearing at pp. 27–32 (Emphasis added).

Regardless of whether Finn was guilty of perjury at the 2004 examination, it is clear from the transcript of the 2004 examination that the Debtor's salaries for the years 1988 and 1989 were properly calculated, both at the criminal trial and at the 2004 examination. Attached to the Debtor's motion to stay is the affidavit of the Debtor's father and Giant Eagle Board member, Nathan Monus. According to the affidavit, Nathan Monus confirms that the Debtor's salary was $275,000 in 1988 and $325,000 in 1989.

Insofar as the Debtor's salary was properly calculated, the Debtor cannot support the argument that Finn's testimony, perjured or otherwise, would affect, in any way, the propriety of the I.R.S. claim. In an obvious effort to re-try his criminal case in bankruptcy court, the Debtor must ultimately rely on the maxim, *"Falsus in uno, falsus in omnibus"* to argue that Finn's testimony (in lieu of the three-page memo) somehow establishes that the I.R.S. claims are invalid because, the funds which he took from the Company were, in fact, funds owed to him through his compensation package. Transcript of December 16, 1997 Hearing at p. 31 ("And if I can take the right people through the right testimony, which may have to also include myself on this issue, you will see that when it was determined to—the embezzlement was a manner in which I was paid my salary compensation reimbursement, *et cetera,* since I started my—since I started in my business career at the Tamarkin Company in 1969. And it didn't change until I was terminated.")

Consequently, it is the opinion of this Court that the Debtor's ability to challenge the I.R.S. claim was not impaired by Judge Bodoh's decision not to refer the Finn allegations to the Justice Department.

*The Settlement*

■■ Under Bankruptcy Rule 9019(a), the bankruptcy court may approve a compromise or settlement "[o]n motion by the

trustee and after a hearing on notice to creditors, the debtor and indenture trustee...." In conducting a hearing under Rule 9019(a), the bankruptcy court is to determine whether the proposed compromise is fair and equitable, *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968), and in the best interests of the bankruptcy estate, *In re American Reserve Corp.,* 841 F.2d 159, 161 (7th Cir. 1987). In making this determination, a bankruptcy judge is required to apprise himself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT Trailer Ferry, Inc.,* 390 U.S. at 424, 88 S.Ct. at 1163; *See also American Reserve Corp.,* 841 F.2d at 161.

■■■ To this end, the bankruptcy judge should:

> [F]orm an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.

*TMT Trailer Ferry, Inc.,* 390 U.S. at 424–25, 88 S.Ct. at 1163.

When considering a compromise settlement, courts have applied various factors to ensure that the settlement is fair, equitable, and in the best interest of the estate and creditors. The Fifth Circuit has applied the following three-part test:

(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law,

(2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

(3) all other factors bearing on the wisdom of the compromise.

*Matter of Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir.1980). The Fifth Circuit stated in *Matter of Texas Extrusion Corp.,* 844 F.2d 1142, 1159 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988), that "in the bankruptcy context, the interests of the creditors *not the debtors* are paramount." (Emphasis added).

The Fifth Circuit's three-part test was derived from the four-part test first announced in *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929) (articulating the factors as "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises.").[2]

The Trustee, in his brief, states that he, based upon the facts and circumstances surrounding the I.R.S. claims, found that it would be necessary to re-litigate all of the Debtor's underlying criminal convictions. Trustee's brief at p. 9. In light of the affirmance of the Debtor's conviction in *United States v. Monus,* 128 F.3d 376 (6th Cir.1998), the Trustee concluded that re-litigation of the claims was fruitless.

---

**2.** For discussion of the Loomis test, *see Jackson Brewing Co.,* 624 F.2d at 609. For application of the four-part test, *see In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.), *cert. denied* 498 U.S. 959, 111 S.Ct. 387, 112

L.Ed.2d 398 (1990); *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.), *cert. denied* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986).

Moreover, the expense and delay of such an undertaking, particularly considering the likely outcome, was considerable:

In this case, the Trustee determined that the litigation with the United States over the underlying basis of the I.R.S. Claim related to the Debtor's alleged income would far outweigh any possible benefit. The Trustee determined that even if he was successful at the Bankruptcy Court level, he would need to litigate appeals at least to the Sixth Circuit Court of Appeals, if not a writ of *certiorari* to the United States Supreme Court. The Trustee considers that the cost associated with continued litigation regarding the I.R.S. Claim would include preparing and filing a brief and reply brief, preparing for oral argument, and, then, if successful, possibly preparing for and participating [in] more appeals. All these costs must be expended with absolutely no guarantee of success. The Trustee is unwilling to take this risk and impose it upon creditors of this Estate to whom he owes fiduciary obligations. As a result, the Trustee believed that the potential fees and costs for undertaking the litigation outweighed any benefit to the creditors.

Trustee's Brief at p. 12.

 "A Trustee has a duty to conserve the assets of the estate to the extent possible where, as here, there are finite assets available to fund the cost of litigation." *In re Lee Way Holding Co.,* 120 B.R. 881, 890 (Bankr.S.D.Ohio 1990). Based upon the foregoing, the Court finds that the Trustee, in entering into the Agreed Settlement Order, exercised his discretion to settle the I.R.S. claim, rather than continue to incur time and expense in what "was best an uncertain prospect of success." Trustee's Brief at p. 13. The complexity of the litigation coupled with the probability of success clearly indicated that entering a settlement was in the best interest of the estate.

Moreover, insofar as the settlement was fair, equitable, and in the best interest of the estate, the Bankruptcy Court's approval of the settlement should not be disturbed. The Debtor has not produced any evidence that the Bankruptcy Judge failed to "compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry,* 390 U.S. at 425, 88 S.Ct. at 1164. Accordingly, the final judgment of the Bankruptcy Court approving the Agreed Settlement Order is **AFFIRMED**, and this matter is **DISMISSED**.

**IT IS SO ORDERED.**