*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1©.*

**File Name: 12b0010n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: CECIL H. MILLER, | ) | |
| | ) | No. 12-8004 |
| Debtor. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio
No. 09-42411.

Submitted: November 14, 2012

Decided and Filed: December 27, 2012

Before: EMERSON, FULTON, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

ON BRIEF: Thomas N. Michaels, Youngstown, Ohio, for Appellants. Michael J. McGee, HARRINGTON, HOPPE & MITCHELL, LTD., Warren, Ohio, for Appellee.

_____

**OPINION**
_____

**THOMAS H. FULTON**, Bankruptcy Appellate Panel Judge. In this appeal Cecil H. Miller (the Debtor) and his daughter Latrese Hyshaw ("Hyshaw") (collectively "the Appellants") appeal

January 10, 2012 orders of the United States Bankruptcy Court of the Northern District of Ohio authorizing the trustee in the Debtor's chapter 7 bankruptcy (the "Trustee") to employ an auctioneer and sell at public auction three pieces of real property (the "Properties") free and clear of liens.

For the reasons that follow, the panel affirms the bankruptcy court's January 10, 2012 orders authorizing the Trustee to employ an auctioneer and sell the Properties.

## I. ISSUES ON APPEAL

The issues in this appeal are as follows: (1) whether the Appellants have standing to appeal the court's order granting the Trustee's motion to sell the Properties; (2) whether the Trustee's proposed sale complies with the requirements of 11 U.S.C. § 363(f) governing sales of estate property free and clear of interests; and (3) whether Federal Rule of Bankruptcy Procedure 6004(c) required the Trustee to serve Hyshaw or the Debtor's widow, Latraill Miller ("Latraill Miller"), with notice of the motion to sell the Properties.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). A bankruptcy court's order authorizing the sale of property of the estate is an appealable final order. *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008).

2

A bankruptcy court's order authorizing the sale of assets under 11 U.S.C § 363(b) is reviewed under an abuse of discretion standard. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 388-89 (6th Cir. 1986). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*)*,* 392 B.R. 288 (B.A.P. 6th Cir. 2008). The bankruptcy court's decision, under this standard, will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)). *See also Mayor and City Council of Baltimore, Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'") "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

## III. FACTS

The factual and procedural background of this case is essentially undisputed. On February 9, 2009, the Debtor granted his daughter Hyshaw three pieces of real property for no consideration. (Appellee's Br. at 5). Several months later, on June 29, 2009, the Debtor filed a voluntary chapter 7 bankruptcy petition. The Debtor received his chapter 7 discharge on February 22, 2010.

The three pieces of real property that the Debtor transferred to Hyshaw (the "Properties") are and have been heavily encumbered. The U.S. Small Business Administration (the "SBA") holds liens on the Properties in excess of $118,000. Collectively, the Properties are valued at approximately $23,000.

The Debtor's transfer of the Properties to Hyshaw did not pass unnoticed. On March 15, 2010, the Trustee initiated an adversary proceeding against the Debtor and Hyshaw. The Trustee's complaint contained three counts: it sought to avoid the Debtor's transfer to Hyshaw as a fraudulent transfer, obtain authorization to sell the Properties free and clear of liens, and determine the validity, priority, and extent of liens on the Properties. On June 16, 2010, shortly after the commencement of the adversary proceeding, the Debtor died.

On February 22, 2011, the Trustee and the Appellants moved for summary judgment on the Trustee's fraudulent transfer claim. Together with his motion for summary judgment, the Trustee submitted to the court "Stipulations of Material Fact." In this document, the Trustee, the Appellants, and the Small Business Administration stipulated that:

> The Small Business Administration has consented to the payment of the Chapter 7 Trustee's administrative fees, attorneys' fees, and costs of sale, prior to the payment of the mortgage of the Small Business Administration from the proceeds of any eventual sale in this case.
>
> The Small Business Administration has also consented to the payment of the first $5,000 of proceeds of sale after payment of the administrative fees, attorneys' fees, and costs of sale to the Chapter 7 Trustee, prior to any distribution of sale proceeds on the properties located at 843 Cameron Drive, Youngstown, Ohio; 349 Breaden Street, Youngstown Ohio; and 7489 Brentwood, Youngstown Ohio.

(Stipulations of Material Fact at 2, Adv. Proc. No. 10-04057, ECF No. 60-2).

On June 28, 2011, the bankruptcy court granted the Trustee's summary judgment motion as to the fraudulent transfer claim, ruling that the Properties "constitute property of the Debtor's bankruptcy estate." (Summary Judgment Order at 13, Adv. Proc. No. 10-40576, ECF No. 72). The bankruptcy court, however, dismissed without prejudice the Trustee's requests to sell the Properties and determine the validity, priority, and extent of liens on the Properties. The court gave its reasoning as follows:

4

> [I]t appears that any potential sale of the properties would provide no benefit to the
> estate because the amount of the SBA liens far surpasses the combined value of the
> Properties. As a consequence, no purpose can be served by this Court determining
> the validity or priority of liens against the Properties because the Properties will
> come back into the estate fully encumbered by the SBA liens.

(*Id.* at 13-14). The court did not mention the Trustee's stipulated agreement with the SBA regarding the sale of Properties. Neither party appealed the bankruptcy court's ruling.

On October 18, 2011, the Trustee filed motions to sell the Properties and appoint an auctioneer. In his motion to sell the Properties ("Motion to Sell"), the Trustee again recounted his agreement with the SBA regarding the sale of the Properties–the same agreement described in the Stipulations in the adversary proceeding. The Trustee confirmed that the SBA had "agreed to a carve-out from the sale proceeds to provide funds to the Chapter 7 Trustee to satisfy all the Trustee's fees and costs, the attorney for the Trustee's fees and costs, and the first $5,000 beyond attorney's fees and Trustee's fees, to go to the Trustee for distribution to the unsecured creditors." (*Id.*).

On December 30, 2011, Hyshaw objected to the Trustee's motions. In her Objections, she argued that "it appears any potential sale of the Properties would provide no benefit to the estate because the amount of the SBA liens far surpasses the combined value of the Properties." (*Id.* at 2). Hyshaw then argued that the value of the Properties was so low that it was possible "that the amount of [the Trustee's] combined fees and costs could exceed the value of the properties leaving no money left for unsecured creditors." (*Id.* at 3). Finally, Hyshaw stated that the Debtor's widow, LaTraill Miller had not been given notice of the Motion to Sell, and that the Trustee was "without authority to sell the property" because the titles were recorded in Hyshaw's name. (*Id.* at 3). In the filed objections Hyshaw repeatedly implied that, because the court had dismissed without prejudice the Trustee's requests for sale and determination of validity of liens in the adversary proceeding, the court was somehow obligated to deny the Motion to Sell.

5

The bankruptcy court held the hearing on the Motion to Sell on January 5, 2012. At the hearing, Trustee's counsel explained to the court that the SBA was in agreement as to the sale of the Properties and that the sale of the Properties was expected to pay both expenses and fees as well as $5,000 to unsecured creditors even if the Properties sold for only half their appraised value. Furthermore, the Trustee's counsel assured the court that the Trustee would have the option of abandoning the Properties if the auction failed to produce an acceptable bid. The bankruptcy court then granted the Trustee's motions to sell the Properties and appoint an auctioneer.

Thomas Michaels ("Michaels"), the attorney for the Debtor and Hyshaw, presented Hyshaw's objections at the hearing. The bankruptcy court asked Michaels what basis Hyshaw had to object to the sale of the Properties. After Michaels responded that Hyshaw was an heir to the Debtor's estate, the bankruptcy court stated: "The property is not in a probate estate and will not be in a probate estate unless the Trustee abandons it . . . . So as a potential heir to the estate of [the Debtor], that's entirely speculative." (Tr. of Hr'g at 6, Bankr. Case No. 09-42411, ECF No. 95). Shortly after this exchange, Michaels changed the focus of his presentation from his client Hyshaw to Latraill Miller, arguing that there "has to be a determination of at least Latraill Miller, the decedent's spouse, what her interest in these properties are." (*Id.*). To this the bankruptcy court replied: "It's property of the estate. I have never heard of Latraill Miller until you mentioned her. If she doesn't show up in the chain of title, I don't know whether she is entitled to notice or not. If there is a deficiency, you've just indicated that you don't represent her, so you can't speak on her behalf." (*Id.* at 7).

On January 10, 2012, the bankruptcy court issued orders granting the Trustee's Motion to Sell the Properties and appoint an auctioneer. Fourteen days later, on January 24, the Debtor's attorney and Hyshaw filed a notice of appeal of the court's orders.

In their Statement of Issues and Designation of Record, the Appellants argued that the bankruptcy court had erred in approving the Trustee's Motion to Sell. The Appellants listed a

6

number of arguments as to why they believed the bankruptcy court erred. These arguments included: (i) that it was improper for the bankruptcy court to grant the Motion to Sell after it had dismissed the Trustee's request to sell the Properties during the adversary proceeding; (ii) that the Trustee had not shown that the sale of the Properties would benefit the estate; (iii) that the Trustee failed to provide Latraill Miller with notice of the Motion to Sell; (iv) that the Debtor's interest in the Properties had transferred to Latraill Miller on the Debtor's death; and (v) that the Trustee was "not in control" of the Properties either on the date the Motion to Sell was filed or the date the motion was granted. (*Id.* at 2).

In their brief to this panel, the Appellants now make a somewhat different set of arguments. First, the Appellants argue that the Trustee failed to satisfy the requirements of 11 U.S.C. § 363(f), governing the sale of property free and clear of liens. Second, the Appellants argue that the Trustee failed to give Hyshaw and Miller proper notice of the Motion to Sell as required by Rule of Bankruptcy Procedure 6004(c).

In his reply brief, the Trustee fails to delve into details regarding the propriety of the sale order. Instead, it appears that the Trustee has devoted most of his efforts to arguing the propriety of the court granting summary judgment in the adversary proceeding to avoid the Debtor's transfer of the Properties to Hyshaw. Toward the end of his brief the Trustee does, however, make a few points to support his position in this appeal: First, he states that his agreement with the SBA will give the sale a chance to bring in funds for unsecured creditors. Second, he claims that the Motion to Sell was "served upon Latreese Hyshaw and Latrail[l] Miller through [] attorney Thomas Michaels." (*Id.* at 9). The Trustee further states that "the argument that the property belonged to Latrail[l] Miller, the widow of Cecil Miller, immediately upon his death is incorrect, since the property had been transferred to his daughter Latreese [Latrese] Hyshaw, prior to the instant bankruptcy case." (*Id.* at 9).

## IV.   DISCUSSION

As described above, the Appellants have made a number of arguments in opposition to the bankruptcy court's order authorizing the Trustee to sell the Properties.  The Panel need not address those arguments, however, because the Appellants lack standing to appeal the bankruptcy court's order.

It is appropriate for the Panel to raise the issue of standing *sua sponte*.[1]  *S.E.C. v. Basic Energy*, 273 F.3d 657, 665 (6th Cir. 2001).  The lack of standing is a jurisdictional bar to appellate review.  *Harker v. Troutman* (*In re Troutman Enters.*), 286 F.3d 359, 364 (6th Cir. 2002).  An appellate court must therefore raise the issue of standing *sua sponte* because it is "under an independent obligation to police its own jurisdiction."  *Basic Energy*, 273 F.3d at 665.

"Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith."  *Troutman*, 286 F.3d at 364.  In order to have standing to appeal a bankruptcy court order, an appellant must be a "person aggrieved" by the bankruptcy court's order.  *Fid. Bank, N.A. v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996).  This doctrine limits standing to those persons who "have been directly and adversely affected pecuniarily by the order . . . .  Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will" an appellant have standing to appeal.  *Id.*; *Travelers Cas. & Sur. v. Corbin* (*In re First Cincinnati, Inc.*), 286 B.R. 49, 51 (B.A.P. 6th Cir. 2002) (citations omitted).  The burden of proving that a party is a "person aggrieved" is on the appellant asserting standing to pursue an appeal.  *Fid. Bank*, 77 F.3d at 882.

---

[1]The Trustee has filed a motion to dismiss this appeal based on the Appellants' lack of standing, and the Appellants have responded.  Because the Panel raises the issue of standing *sua sponte*, there is no need to address the parties' arguments.

Courts rarely find that a chapter 7 debtor is a "person aggrieved" by a bankruptcy court order regarding the disposition of property of the estate. *Monus v. Lambros*, 286 B.R. 629, 634 (N.D. Ohio 2002).

> The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case. Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.

*Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001) (citing 11 U.S.C. §§ 541(a) and 704(a)); *see also* 11 U.S.C. § 323. Pursuant to 11 U.S.C. § 727, the chapter 7 discharge releases the debtor from all personal liability for his debts. These Bankruptcy Code sections work together to restrict a chapter 7 debtor's standing to appeal an order from the bankruptcy court. "[A] hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *In re El San Juan Hotel*, 809 F.2d 151, 154-55 (1st Cir. 1987) (citations omitted). As a result, the chapter 7 trustee is often the only party who has standing to appeal an order that impacts the disposition of property of the estate. *Richman v. First Woman's Bank* (*In re Richman*), 104 F.3d 654, 657 (4th Cir. 1997).

> There are two exceptions to a chapter 7 debtor's limited standing:
>
> (1) if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code 726(a)(6), . . . or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy.

*Kowal v. Malkemus* (*In re Thompson*), 965 F.2d 1136, 1144 n.12 (1st Cir. 1992) (citations omitted). If the debtor fails to present concrete evidence that either exception applies, he does not have standing to challenge a bankruptcy court order. *United States v. Jones*, 260 B.R. 415, 418 (E.D. Mich. 2000). To proceed under the first exception, "the debtor cannot simply claim that there is a

theoretical chance of a surplus in the estate, but must show that such surplus is a *reasonable possibility*." *Simon v. Amir* (*In re Amir*), 436 B.R. 1, 10 (B.A.P. 6th Cir. 2010) (internal quotation marks and citations omitted) (emphasis added); *Nangle v. Surratt-States* (*In re Nangle*), 288 B.R. 213, 216 (B.A.P. 8th Cir. 2003).

In this case, neither the Debtor nor Hyshaw is a "person aggrieved" with standing to appeal the bankruptcy court's order authorizing the sale of the Properties and appointment of an auctioneer. The Properties are underwater; encumbered by SBA liens of far greater value than the Properties themselves. Thus, the Debtor cannot show that an appeal of the sale order would result in any surplus to which he would be entitled. Furthermore, the Debtor has made no statements–much less presented concrete evidence–indicating that the sale order would affect his discharge. Thus, the Debtor has no pecuniary interest in the Properties sufficient to make him a "person aggrieved" by the Properties' sale.

As for Hyshaw, the same considerations operate to deny her standing to appeal the bankruptcy court's order. Though Hyshaw may be an heir to the Debtor, and though her name may appear on the Properties' recorded titles, these facts do not give her a pecuniary interest in the Properties. As explained earlier, the Debtor will receive no surplus from the sale of the underwater Properties and has alleged no effect that the sale might have on his own personal liabilities. Thus, sale of the Properties will have no pecuniary impact on whatever inheritance Hyshaw may receive from the Debtor. The Debtor cannot pass on to Hyshaw any surplus that he himself would not receive. Nor can he pass on any liabilities that he himself would not incur. Moreover, the mere presence of Hyshaw's name on the recorded titles to the Properties fails to give her a pecuniary interest in the Properties. Her name is present on the recorded titles because she received a transfer of the Properties from the Debtor shortly before the Debtor's bankruptcy. But that transfer was avoided by the bankruptcy court during the Trustee's adversary proceeding. Because Hyshaw will receive neither a surplus nor liabilities from the sale of the Properties, she has no pecuniary interest sufficient to allow her to appeal the bankruptcy court's order. Having determined that the Appellants

lack standing to appeal the bankruptcy court's order, the Panel will refrain from addressing the issues raised in the Appellants' briefs.

## V. CONCLUSION

For the foregoing reasons, the Panel affirms the January 10, 2012 bankruptcy court orders authorizing the Trustee to sell the Properties and appoint an auctioneer.