624 F.2d 599
 6 Bankr.Ct.Dec. 1034
 In the Matter of JACKSON BREWING COMPANY, Debtor.
RIVERCITY, a Louisiana Partnership, Appellant,
v.
William W. HERPEL, as Reorganization Trustee for Jackson
Brewing Company, American Can Company, and
Hibernia National Bank in New Orleans as
Trustee for the Estate of
Edgar B. Fontaine, Appellees.
 Nos. 78-2246, 78-2118.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 21, 1980.
 
 Chaffe, McCall, Phillips, Toler & Sarpy, George W. Pigman, Harry McCall, Jr., James P. Farwell, New Orleans, La., for appellant.
 Charles M. Lanier, Harry A. Rosenberg, New Orleans, La., for appellees.
 Peter J. Butler, Gayle A. Reynolds, New Orleans, La., for Herpel.
 Monroe & Lemann, Jerry A. Brown, New Orleans, La., for American Can Co.
 Dodge, Friend, Wilson & Spedale, Joseph E. Friend, New Orleans, La., for Federal Paper Board.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, GEWIN and TJOFLAT, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 This is an appeal of the approval of a compromise in a corporate reorganization involving Jackson Brewing Company. Here the compromise is between the Trustee and American Can (and other creditors), with challenges hurled by Rivercity. (See companion appeal in American Can v. Herpel (In re Jackson Brewing Co.), 624 F.2d 605 (5th Cir. 1980) involving a compromise between the Trustee and Rivercity, with challenges hurled by American Can (and other creditors)). In this case we hold that the District Court did not abuse its discretion in approving the compromise and affirm.
 
 I.
 
 2
 In 1974 Jackson Brewing Co. ("Jax") was placed in reorganization on the petition of several of its creditors. Jax's difficulties harken back to 1970 when all of its stock was acquired for $11,235,000 by James W. Howard. Howard, a Chicago promoter, acquired the stock in the name of a new corporation, JBC. Howard immediately began to deplete the company of its assets. The evidence suggests that he withdrew over $14,000,000 over one and one-half years through two partnerships in which JBC was a partner, Rivercity and French Eighth.
 
 
 3
 Jax owned two very valuable parcels of real estate in New Orleans. The larger parcel is involved in this compromise and its appeal, while the smaller one is the subject of the companion case, American Can v. Herpel (In re Jackson Brewing Co.), 624 F.2d 605 (5th Cir. 1980).
 
 
 4
 In 1971 Jax (then wholly owned by JBC) granted Rivercity a five year option to purchase certain land. Rivercity was to give written notice of its intention to exercise its option between January 1 and 31, 1975 with the purchase price at $2,700,000. When, after Jax was put into reorganization, Rivercity attempted to exercise the option, the Trustee requested and received the authority to reject the option as an executory contract. The District Court approved the rejection and we affirmed. Rivercity v. Herpel (In re Jackson Brewing Co.), 567 F.2d 618 (5th Cir. 1978).
 
 
 5
 Meanwhile American Can obtained a substantial interest in Jax. When Jax encountered financial difficulties American Can extended credit to Jax. Jax also borrowed substantially from Whitney National Bank of New Orleans, securing the loans with stock pledges and security interests in Jax's assets. American Can then bought the Whitney loans and acquired the pledged stock to improve its position as a creditor. American Can then exercised its rights as a pledgee and in June of 1974 became the sole stockholder and secured creditor of Jax.
 
 
 6
 When Jax went into reorganization American Can filed a proof of claim as a secured creditor in an amount exceeding $10,000,000. The Trustee and American Can worked out a compromise (after Rivercity's option was cancelled) with the following basic elements:
 
 
 7
 1. American Can would cancel $5,500,000 of its secured debt in exchange for a deed to the Riverside property,
 
 
 8
 2. The Trustee would dismiss his objection with prejudice to American Can's proof of claim as secured creditor,
 
 
 9
 3. American Can would subordinate its claim to the $1,000,000 in cash held by the Trustee (all the funds in Jax's treasury) and to certain other monies and claims,
 
 
 10
 4. The Trustee from the funds (see 3) would pay all administrative expenses and ad valorem taxes on the property, and
 
 
 11
 5. The Trustee would pay all monthly rents on the property through the end of that month.[1]
 
 
 12
 In re Jackson Brewing Co., No. 74-1840 (E.D.La. May 1, 1978) (order authorizing compromise of claim).
 
 
 13
 The compromise was supported by all the parties except Rivercity. Despite Rivercity's objection, the District Court approved the compromise setting out its reasons in a thorough and thoughtful opinion. In re Jackson Brewing Co., No. 74-1840 (E.D.La. July 18, 1978). Rivercity appeals.[2]
 
 II.
 
 14
 Section 27 of the Bankruptcy Act,[3] in conjunction with § 187,[4] authorize a Trustee, with the Court's approval, to compromise claims arising in the administration of an estate in Chapter X reorganizations. 6 Part 2 Collier On Bankruptcy P 8.07 (14th ed. 1978); Daniel Hamm Drayage Co. v. Willson, 178 F.2d 633 (8th Cir. 1949).
 
 
 15
 To assure a proper compromise the bankruptcy judge, must be apprised of all the necessary facts for an intelligent, objective and educated evaluation. He must compare the "terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson ("TMT Trailer"), 390 U.S. 414, 425, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, 10 (1968). He must evaluate and set forth in a comprehensible fashion:
 
 
 16
 (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,
 
 
 17
 (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
 
 
 18
 (3) All other factors bearing on the wisdom of the compromise.
 
 
 19
 Id. at 424-25, 88 S.Ct. at 1163, 20 L.Ed.2d at 9-10. See also American Employers' Insurance Co. v. King Resources Co., 556 F.2d 471 (10th Cir. 1977) (detailing a 10 factor test employed by the Court); Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929) (listing the factors as "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."); Ashbach v. Kirtley, 289 F.2d 159 (8th Cir. 1961) (following the factors in Drexel v. Loomis, supra ); 2A Collier On Bankruptcy P 27.04 (14th ed. 1978).
 
 
 20
 The duty of an appellate court, then, in reviewing a District Court's approval of a compromise, is to assure that this compromise is truly "fair and equitable" and "in the best interest of the estate." TMT Trailer, 390 U.S. at 424, 88 S.Ct. at 1163, 20 L.Ed.2d at 9. We must remember that compromises are "a normal part of the process of reorganization," Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 130, 60 S.Ct. 1, 14, 84 L.Ed. 110, 128 (1939), quoted in TMT Trailer, 390 U.S. at 424, 88 S.Ct. at 1163, 20 L.Ed.2d at 9, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly. Florida Trailer and Equipment Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960).
 
 
 21
 Nonetheless we may not and do not retry the controversy de novo nor rejudge matters for the trial judge. Rather, stated simply, and with comforting familiarity, the approval of a compromise is addressed to the sound discretion of the District Court whose judgment will not be disturbed except for an abuse of discretion. Florida Trailer and Equipment Co. v. Deal, 284 F.2d at 571; Ashbach v. Kirtley, supra; Daniel Hamm Drayage Co. v. Willson, 178 F.2d at 635-36; Fernow v. Gubser, 136 F.2d 971, 972 (10th Cir. 1943); Hair v. Byars (In re Summerville Cotton Mills), 92 F.2d 684 (5th Cir. 1937). See also Jones Financial Corp. v. Ray (In re Atlas Sewing Centers, Inc.), 384 F.2d 66, 83 (5th Cir. 1967) (refusing to disturb the delicate judgment of a District Court where record fully supports settlement of litigation in bankruptcy proceeding). With these principles before us, we review the American Can compromise.
 
 III.
 
 22
 Rivercity, versed in the applicable law, makes three basic arguments which it says reveal an abuse of the District Court's discretion.
 
 
 23
 First, Rivercity claims that the compromise on its face fails to confer any benefits of significance on the Jax estate or its creditors. More specifically, Rivercity says the unsecured claims are not yet allowable, nor is it definitively proven that American Can has a secured claim on funds in the estate's treasury, nor does the Trustee surrender anything which is not otherwise required by paying administrative expenses, ad valorem taxes or rents due. These arguments prove little, if anything. On its face, the compromise appears to be just what its label implies a compromise with the Trustee giving up property in exchange for American Can giving up its alleged secured claim to money from the Trustee.
 
 
 24
 Boiled down, the compromise consists of the following.[5] The Trustee gives up real estate and pays administrative expenses and ad valorem taxes while American Can gives up its substantial proof of claim with a legitimate basis for asserting secured status and subordinates its substantial unsecured claim both then totaling approximately $10,000,000 ($8,500,000 claim plus $1,500,000 interest). The Trustee receives the cancellation of $5,500,000 of American Can's potentially estate-consuming, and at least arguably secured, debt and the subordination of American Can's unsecured claim to all present treasury funds (approximately $1,000,000), to certain funds generated in the future, and up to $350,000 so that other creditors may receive 60% or (for those who already received 20%) 40% of their claims while American Can receives real property. Moreover, remembering that the District Court determines probabilities of success rather than certainties, the questions of whether claims are allowable and whether American Can has a secured and non-subordinated claim, were proper considerations for the District Court. Further, while the Trustee may already have been under obligations for expenses, taxes and rent, these operational elements of the compromise were not necessarily prime constituents of American Can's consideration, and assured the trustee of having cash by which to handle these demands.
 
 
 25
 Second, Rivercity challenges the District Court's closer analysis of the compromise, claiming that there was insufficient evidence that the compromise benefited the estate and its creditors. It is undeniable that a compromise must be based on valuable consideration. Petition of Baxter (In re Orinoco Corp.), 269 F. 344 (6th Cir. 1920), cert. denied sub nom., Baxter v. Safford, 256 U.S. 694, 41 S.Ct. 535, 65 L.Ed. 1175 (1921). Rivercity's appraiser valued the property at $6,270,000, but failed to subtract the cost of needed demolition. The court-appointed appraiser placed the value lower than Rivercity's expert, at $5,900,000, but he assumed that the property would be sold in parcels over a period of nine months to one year. Considering also, as did the District Court, the restricted zoning and use purposes of the property, to which a prospective purchaser would be subject, the Court concluded that $5,500,000 was a fair sale price to American Can. We perceive no substantial reason to disturb these findings by the District Court.
 
 
 26
 Moreover, we agree with the District Court that in exchange for the sale of the property the Trustee received commensurate value from American Can. As the District Court well realized, if American Can is merely a general creditor or its claim readily subject to subordination, the Trustee would not receive the equivalent of $6,500,000 plus for the compromise. The Court concluded, after extensive testimony, and we agree, that the resolution of these questions was sufficiently uncertain not to risk the consequences of an adverse decision.
 
 
 27
 Rivercity argues that the District Court merely paid "lip service" to the possibility of subordination under Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692 (5th Cir. 1977) without sufficient "in-depth evaluation," and with inappropriate reliance on American Can's acquittal in a certain California contempt proceeding. Rivercity concedes that the District Court made all the right legal noises, squarely grounded in unquestionable jurisprudence, but used this as a mask through which to reach an improper result. This we cannot accept. The trial judge was fully aware of, and familiar with, all the issues, parties and evidence in the case, holding no less than 13 formal hearings, and numerous additional informal conferences. We would violate the purpose of a compromise proceeding were we to require further substantiation of already amply documented facts. As we explained in Florida Trailer and Equipment Co. v. Deal, 284 F.2d at 571 (affirming approval of bankruptcy settlement under § 27),
 
 
 28
 Of course, the approval of a proposed settlement does not depend on establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable.
 
 
 29
 . . . (T)he very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements.
 
 
 30
 See also Daniel Hamm Drayage Co. v. Willson, 178 F.2d at 635-36 (approving In re Prudence Co., 98 F.2d 559 (2d Cir. 1938), cert. denied sub nom., Stein v. McGrath, 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037 (1939)). With sufficient support in the record, we will not permit Rivercity to reopen the compromise on such speculative, self-serving grounds.
 
 
 31
 Rivercity next contends that the Trustee failed to make an independent informed evaluation of the merits of American Can's proof of claim. Again Rivercity concedes that the District Court "claimed" to consider the merits of the proof of claim, but demands a "complete record" before approval. Again, we disagree. As the District Court observed, the Trustee is an experienced businessman familiar with corporate reorganization. He testified regarding numerous discussions with counsel evincing careful consideration of the uncertainties and expenses related to American Can's proof of claim. From his own personal observation of the Trustee, the District Judge concluded the Trustee was thoroughly conversant with the entire matter. We agree the Judge was entitled to reach that conclusion.
 
 
 32
 Third, and finally, Rivercity maintains that the compromise was based on the false assumption that American Can has a valid secured claim reaching over $10,000,000. The District Court noted Rivercity's position that 7 promissory notes were unsecured but rejected it or, at a minimum, found sufficient uncertainty, as do we, to weigh in on the side of compromise. Similarly, the Court acknowledged the difficulty of establishing as a matter of law (1) that the transfer of certain monies in the amount of $3,356,508.21 was a capital contribution, was a payment in satisfaction of debt, or constituted any improper conduct claimed by Rivercity, or (2) that American Can lacked a secured claim of approximately $1,000,000 regarding certain Jax movables. These matters were also hotly disputed by the parties. We decline to refire the controversy absent a clearer showing by Rivercity of the correctness of its position.
 
 
 33
 In addition, like the District Court, we also find it noteworthy, albeit not conclusive, TMT Trailer, 390 U.S. at 435, 88 S.Ct. at 1168, 20 L.Ed.2d at 15-16, that Rivercity was the only creditor to oppose the compromise. In re Los Angeles Lumber Products, 46 F.Supp. 95, 100-01 (S.D.Cal.1942) (factor of substantial creditor approval not determinative but entitled to some weight). Indeed, as American Can argues, Rivercity may not even be a "party in interest" with standing to object to American Can's proof of claim. Moreover, without approval of the compromise, American Can could continue to maintain its claim as a secured creditor, leaving the other creditors with nothing or next to nothing on their claims.
 
 
 34
 The District Court fully and fairly evaluated the probable success of American Can's proof of claim, its uncertainties, complexities, and likely cost, and numerous other factors related to the compromise. Its conclusion that the compromise was fair, equitable and in the best interest of the estate and its creditors, does not in any way suggest an abuse of its sound and sage discretion. Under all appropriate standards it was correct.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 The compromise specifically provides:
 A) Trustee shall execute an act of sale in favor of American Can Company, pursuant to which all of the real estate now owned by Jackson Brewing Company
 . . . and pursuant to which all of the leasehold interest now owned by Jackson Brewing Company
 shall be sold and conveyed, free and clear of all mortgages, liens and encumbrances to American Can Company, or its nominee, in consideration of the price of $5,500,000, which consideration shall be paid by American Can Company giving credit to the debtor corporation for that exact amount, against the indebtedness owed by the debtor corporation to American Can Company, as set forth in its proof of claim. Said sale shall be without warranty or recourse, but with full substitution and subrogation into all of the rights of action of warranty that either the Trustee or the debtor corporation has or might have against all preceding owners and vendors;
 B) Trustee shall dismiss, with prejudice, his objection to the proof of claim filed in these proceedings by American Can Company, as a secured creditor of the debtor corporation;
 C) American Can Company shall subordinate its claim (secured or otherwise) to all of the funds presently in the treasury of Jackson Brewing Company (in the approximate amount of $1,000,000.00, which funds were generated, to an overwhelming extent, by the sale of machinery and equipment, which was encumbered by a first mortgage now held by American Can Company), and shall further subordinate its claim (secured or otherwise) to any funds generated in the future by the sale of any remaining assets owned by the debtor corporation, to all administrative expenses to be recognized and allowed by the reorganization Court; and in addition, to the extent of the lesser amount of either:
 1) 60% of the claims recognized and classified by the Trustee as allowable, which claims have been asserted by American Flange & Mfg. Co., Continental Lithographics, Inc., Federal Paper Board Company and Kerr Glass Mfg. Company;
 2) 40% of the claims of all other unsecured trade creditors of the debtor corporation as recognized and classified by the Trustee (this does not include any claims of the pension trust or fund); or
 3) The total dollar amount of $350,000.00.
 D) Trustee shall pay, as an administrative expense, from the funds now in the treasury of the debtor corporation, all ad valorem taxes now due and owing to any appropriate taxing authority with respect to the real estate now owned by the debtor corporation;
 E) Trustee shall pay all monthly rents due to Hibernia National Bank in New Orleans,
 . . . through the end of the month in which said leasehold interest is transferred and conveyed by the debtor corporation to American Can Company.
 
 
 [2]
 A more complete description of the details of the compromise in Rivercity's arguments can be found in the District Court's opinion. We present only the more important facts necessary for our review. Although unpublished, we are directing that a copy be preserved as a part of the records of this Court and readily available for examination and copying in the future
 
 
 [3]
 Section 27, 11 U.S.C.A. § 50, provides:
 § 50. Compromises. The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate.
 
 
 [4]
 Section 187, 11 U.S.C.A. § 587, states:
 § 587. Same; rights, powers, and duties
 Where not inconsistent with the provisions of this chapter, a trustee, upon his appointment and qualification, shall be vested with the same rights, be subject to the same duties, and exercise the same powers as a trustee appointed under section 72 of this title, and, if authorized by the judge, shall have and may exercise such additional rights and powers as a receiver in equity would have if appointed by a court of the United States for the property of the debtor.
 
 
 [5]
 The compromise is set out supra at footnote 1