United States Court of Appeals,

Fifth Circuit.

No. 95-10147.

In the Matter of FOSTER MORTGAGE CORPORATION, a Louisiana Corporation, Debtor.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, et al., Appellants,

v.

UNITED COMPANIES FINANCIAL CORPORATION and Foster Mortgage Corporation, Appellees.

Nov. 9, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

In this opinion, we consider the propriety of a compromise settlement agreement between a debtor company Foster Mortgage (Foster) and its parent corporation United Companies (United) in Chapter 11 bankruptcy. Connecticut General Life Insurance Company, representing unsecured creditors (the Noteholders) holding 95% of Foster's indebtedness, opposed the settlement agreement.[1] For the reasons stated below, we vacate the settlement and remand for further proceedings.

---

[1] Foster had already paid its secured creditors by the time of litigation. The unsecured creditors, now appellants in this Court, were Connecticut General Life Insurance Co. on behalf of itself and also on behalf of particular accounts, Cigna Property and Casualty Insurance Co., Life Insurance Co. of North America, Insurance Co. of North America, Cigna Mezzanine Partners, the Franklin Life Insurance Co., Royal Maccabees Life Insurance Co., Southern Farm Bureau Life Insurance Co., and the Union Life Insurance Co.

Background

Foster is a Louisiana corporation that engaged in the mortgage servicing business from headquarters in Fort Worth, Texas from 1990 until 1993 as a wholly owned subsidiary of United. On December 31, 1992, the audited financial statement of Foster showed assets of $111.7 million against liabilities of $89 million, for a positive net worth of $22.7 million. Among those liabilities was approximately $67.4 million of unsecured notes owed to the Noteholders who had helped finance Foster's formation. Unfortunately for the Noteholders, Foster's business precipitously declined such that on May 28, 1993, at the request of United, the plaintiffs restructured their notes by converting a portion of the debt to preferred stock to assist Foster in maintaining a positive net worth. Foster's fortunes did not improve, and in September and November of 1993 it sold off its mortgage servicing portfolios, thereby creating approximately $70-80 million of net operating losses.

In December, 1993, the Noteholders filed an involuntary Chapter 11 petition against Foster. At that time, Foster owed the Noteholders $47.8 million. The Bankruptcy Court granted the petition on February 10, 1994. The Noteholders moved to terminate the debtor's exclusive period to propose a plan on May 23, 1994, so that they could propose their own plan. This plan included a claim for tax loss payments owed to the debtor by the parent company United. Foster and United had operated under an agreement to file consolidated tax returns as of January 1, 1990. As a result of the

tax agreement United was required to compensate Foster for a portion of the net operating losses. United would use the losses to offset income from the entire group of companies it owned.

On June 9, 1994, the Bankruptcy Court granted the Noteholders' motion to terminate. That very same day, the debtor filed its plan of reorganization. The debtor's plan was constructed around a proposed settlement between the parent company and Foster, releasing all claims against the parent company including but not limited to the claims of the debtor under the intercompany tax agreement. The proposed settlement consideration was $1.1 million.

Foster and United made a joint motion for approval of their settlement agreement on June 29, 1994, to which the Noteholders filed objections. The Noteholders meanwhile offered their Chapter 11 plan a day later on June 30, 1994. This plan proposed to preserve the debtor's tax loss claims against the parent company. The Bankruptcy Court held hearings on the compromise settlement from August 16-18, 1994. The court denied approval of the original $1.1 million settlement but subsequently gave its blessing to a modified settlement for $1.65 million on September 8, 1994. The district court affirmed the bankruptcy court approval and this appeal followed. Both lower courts' approbation of the parent-child agreement is the basis for the appeal now before us.

The question at the center of this dispute is how much Foster should have been compensated by the parent for its $70-80 million of losses. According to United, Foster's transfer of stock during insolvency worked a deconsolidation for tax purposes such that

United was no longer responsible for loss compensation after the transfer (May 28, 1993). The Noteholders argue that the parent owed loss payments to the child for the entire year (in their estimation, at least $3.5 million and as much as $28 million) and that the bankruptcy court abused its discretion by approving the arrangement. The Noteholders ask us to reverse to allow them to litigate the issue of tax loss reimbursements. Because the bankruptcy court abused its discretion by failing to show adequate deference to the interests of the overwhelming majority of creditors, we reverse.

## Discussion

### A. Standard Of Review

This Court should review the Bankruptcy Court's approval of the compromise settlement for abuse of discretion. *In re Emerald Oil Co.,* 807 F.2d 1234, 1239 (5th Cir.1987); *In re Jackson Brewing Co.,* 624 F.2d 599, 602-603 (5th Cir.1980). The Bankruptcy Court's conclusions of law are subject to *de novo* review but its findings of fact may not be set aside by the reviewing court unless "clearly erroneous." *Sequa Corp. v. Christopher (In re Christopher),* 28 F.3d 512, 514 (5th Cir.1994). An appellate court may reverse a fact finding of the lower court only if left with "a firm and definite conviction that a mistake has been committed." *Sequa,* 28 F.3d at 514.

### B. Did The Court Abuse Its Discretion In Accepting This Settlement?

A bankruptcy court may approve a compromise settlement of a

debtor's claim pursuant to Bankruptcy Rule 9019(a).[2]  However, the court should approve the settlement only when the settlement is fair and equitable and in the best interest of the estate.  *Jackson Brewing Co.,* 624 F.2d at 602;  *U.S. v. AWECO (In re AWECO),* 725 F.2d 293, 298 (5th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984).  The judge must compare the "terms of the compromise with the likely rewards of litigation." *Jackson Brewing,* 624 F.2d at 607 (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 425, 88 S.Ct. 1157, 1164, 20 L.Ed.2d 1 (1968)).

When considering a compromise settlement, courts have applied various factors to ensure that the settlement is fair, equitable, and in the interest of the estate and creditors.  This circuit has applied a three-part test.  In specific, the bankruptcy court must consider:

(1)  the probability of success in the litigation, with due consideration for the uncertainty in fact and law,

(2)  the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

(3) all other factors bearing on the wisdom of the compromise.

*Jackson Brewing,* 624 F.2d at 609.

While this Circuit has not elaborated on the "other factors bearing on the wisdom of the compromise", we do so now.  One such

---

[2]Bankr.R. 9019(a), 11 U.S.C. (Supp.1995), provides:  "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

factor relevant to the case *sub judice* is the fourth prong to the famous test offered by the Eighth Circuit in *Drexel v. Loomis:* the paramount interest of creditors with proper deference to their reasonable views.[3]  This Circuit stated in *Matter of Texas Extrusion Corp.,* 844 F.2d 1142, 1159 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988), that "in the bankruptcy context, the interests of the creditors not the debtors are paramount."

While the desires of the creditors are not binding, a court "should carefully consider the wishes of the majority of the creditors." *In re Transcontinental Energy Corp.,* 764 F.2d 1296 (9th Cir.1985).  Several courts have incorporated creditor support for a compromise as one of the factors in deciding whether to approve a settlement. *See, e.g., Reiss v. Hagmann,* 881 F.2d 890, 892-893 (10th Cir.1989);  *Nellis v. Shugrue,* 165 B.R. 115, 122 (S.D.N.Y.1994);  *In re MCorp Financial, Inc.,* 160 B.R. 941, 953 (S.D.Tex.1993).

In *Reiss v. Hagmann,* the Tenth Circuit vacated a settlement

---

[3]This circuit's three-part test was derived from the four-part test first announced in *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929) (articulating the factors as "(a) the probability of success in the litigation;  (b) the difficulties, if any, to be encountered in the matter of collection;  (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it;  (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises.").  For discussion of the *Loomis* test, *see Jackson Brewing Co.,* 624 F.2d at 609.  For application of the four-part test, *see In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.), *cert. denied* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990);  *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.), *cert. denied* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986).

where there was only a single creditor, that creditor was able to cover the costs of litigation and would receive nothing without success in the lawsuit. 881 F.2d at 892-893. Citing the First Circuit, the court observed that, "we have found no precedent for a compromise ... actively opposed by the major creditors and affirmatively approved by none." *Id.* (citing *In re Lloyd, Carr & Co.,* 617 F.2d 882, 889 (1st Cir.1980)). This suggests that a bankruptcy court may not ignore creditors' overwhelming opposition to a settlement. We believe a bankruptcy court should consider the amount of creditor support for a compromise settlement as a "factor bearing on the wisdom of the compromise," as a way to show deference to the reasonable views of the creditors.

Another factor bearing on the wisdom of the compromise at hand is the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *Nellis,* 165 B.R. at 122; *MCorp Financial,* 160 B.R. at 953; *In re Present Co.,* 141 B.R. 18, 21 (Bkrtcy.W.D.N.Y.1992). When a debtor subsidiary settles a claim it has against a parent corporation without the participation of the creditors, a bankruptcy court should carefully scrutinize the agreement. *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 498 (S.D.N.Y.1991).

When we look to the record and decision of the bankruptcy court below, we are not convinced that the lower courts considered all factors bearing on the wisdom of the compromise. The bankruptcy court made findings showing its consideration of the first two factors found in *Jackson Brewing.* The court found that

7

"Foster or a trustee would have a limited chance of success on the tax claims raised." The court concluded from the evidence put on by the parties that a full-fledged trial on the tax issues would take approximately seven trial days, would cost between $500,000 and $700,000 and would take two to three years to reach resolution. Finally, the bankruptcy court found that the settlement offer was "reasonably equivalent to the value of the claims released" and was therefore "in the best interest of the creditors of the estate."

We do not pass on the bankruptcy court's finding on the tax question. Our concern is that the courts below gave no consideration to issues we find dispositive: that nearly all creditors in interest opposed this settlement and that the settlement was reached between insiders without the participation of the creditors. In our estimation, the court abused its discretion by not showing proper deference to the views of the creditors.

As in *Reiss v. Hagmann,* the Noteholders, acting as one, have opposed Foster's settlement and are willing to cover their litigation costs. The Noteholders were and are prepared to bring this tax claim that the debtor had against its parent company and which it settled in haste as the creditors closed in.[4] They are willing to forego the $1.65 million received by Foster in favor of uncertain litigation to establish Foster's right to greater loss payments. The bankruptcy court below made no findings on creditor

<hr>

[4]The Noteholders stated on oral argument that they had established a fund with which to finance the tax litigation.

opposition. We find this itself an abuse of discretion; the judge failed to consider what in this case was nearly unanimous creditor opposition to the settlement between parent and child.

The relationship between United and Foster troubles us as well. United acted to settle its dispute with its child company before even determining what tax savings it had actually received from Foster's losses. The court below should have examined more carefully this deal between parent and child. The relationship between parent and child militates in this case against allowing a settlement for considerably less than the creditors believe they are owed and are willing to litigate for. This Court is not surprised that the creditors oppose the settlement between parent and child, the negotiation of which they were not a part.

The opinion of this Court does not preclude the consideration of future possible compromise agreements of this claim. In examining such a compromise, the bankruptcy court must consider the "paramount interest of the creditors" and the nature of the negotiations as factors bearing on the wisdom of the compromise. The court's scrutiny must be great when the settlement is between insiders and an overwhelming majority of creditors in interest oppose such settlement of claims. While no magic words need be spoken, there must be evidence that such factors were considered. We are careful to add that we are creating no per se rule allowing a majority of creditors in interest to veto a settlement. This Court merely states that for failing to consider the overwhelming opposition to the settlement and the familial relationship between

Foster and United, the bankruptcy court abused its discretion by accepting this settlement.

## Conclusion

Finding approval of the settlement agreement to be an abuse of discretion, we REVERSE the district court and VACATE the settlement between Foster and United and REMAND for further proceedings in accord with this opinion.