IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-20644

In the Matter of: YORKSHIRE LLC

                              Debtor
-------------------------------------------------------------

TRACY KNIGHT; JOHN A. LEONARD

                              Appellants
v.

TERRY LUEDTKE; GEORGE LUEDTKE

                              Appellees

_____

In the Matter of: TAGT LP

                              Debtor
-------------------------------------------------------------

TRACY KNIGHT; JOHN A. LEONARD

                              Appellants
v.

TERRY LUEDTKE; GEORGE LUEDTKE

                              Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas
4:06-CV-3350

Before GARZA and DENNIS, Circuit Judges, and MILLS,[*] District Judge.

PER CURIAM:[**]

Appellants Tracy Knight ("Knight") and John A. Leonard ("Leonard") (together, "Appellants") appeal from a Final Judgment of the District Court, which adopted and affirmed an order of the Bankruptcy Court sanctioning Appellants for filing two bankruptcy petitions in bad faith. The Bankruptcy Court's order granted the motion for sanctions filed by Appellees Terry Luedtke ("Terry") and George Luedtke ("George") (together, "Luedtkes"). Because we conclude that the Bankruptcy Court did not abuse its discretion, we AFFIRM.

I

In 2003, the Luedtkes and Knight started a custom slaughterhouse in Houston, Texas. In essence, the business sold livestock to customers and then slaughtered it according to their specifications. Because the slaughterhouse processed only livestock that its customers already owned, it did not need to comply with the same meat-inspection regulations as entities selling processed meat. Several legal entities were formed to provide various functions in the business, including: Harris Country Farms, the processor ("HCF"); TAGT, L.P., the facility owner ("TAGT"); and Yorkshire, LLC, the sole general partner of TAGT, L.P. ("Yorkshire"). Knight served as president and a manager of Yorkshire. The record is unclear, but it appears that some member of the

---

[*] Chief Judge of the Northern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Luedtke family also served as a manager of Yorkshire. This appeal deals with the bankruptcy petitions of Yorkshire and TAGT.

The initial business was undercapitalized, but at no time was it insolvent. When additional capital was needed, Terry contributed it. For his part, Knight made an initial investment and one additional investment but backed out of commitments to make further investments. Instead, Knight contributed only his labor or "sweat equity." Eventually, Knight insisted that he be paid a salary. When Terry refused to put additional cash into the business to fund that salary, Knight refused to work and distanced himself from the daily operations. These disagreements caused significant discord between Knight and the Luedtkes.

The business disagreements between Knight and the Luedtkes came to a head in the spring of 2005, when Knight sued the Luedtkes, HCF, Yorkshire, and TAGT, among others, in state court in Wichita County, Texas. Although Wichita County was a proper forum, the defendants moved to transfer the action to Harris County, which they argued was a more convenient forum and also a legally-acceptable forum because the company's operations were in Houston. The court scheduled a venue hearing for March 10, 2006.

In February 2006, the Luedtkes called a meeting on behalf of the various business entities. The Luedtkes sent a proper notice to Knight indicating that the meeting would be held on March 3, 2006 and that during the meeting they would consider removing Knight from any position of authority at Yorkshire. Knight requested that the meeting be postponed until March 8. The Luedtkes agreed, and it was.

On March 3, 2006, less than one week before the meeting and the venue hearing, Knight filed for bankruptcy on behalf of both Yorkshire and TAGT. Knight hired Attorney Leonard as bankruptcy counsel for Yorkshire and TAGT.

Knight informed Leonard that Knight was the President and sole Manager,[1] which allegedly was substantiated by a corporate certificate listing him as such.[2] Leading up to the bankruptcy filing, the record shows that Leonard conducted little diligence on the financial status of the entities and no diligence on their ownership and management so as to reach an informed decision as to whether a bankruptcy filing was warranted, and, if so, who had authority to file it. Moreover, Knight and Leonard prepared for the bankruptcy in secret: they did not consult with or inform any other owner, officer, employee, or creditor. Leonard signed each petition as "attorney for the debtor," and Knight signed each petition as "President, Manager."

The Luedtkes held the March 8 meeting, and removed Knight from any position of authority. Knight did not attend. On March 9, Attorney Yandell substituted as counsel for the debtor, and the state court action was removed to the Bankruptcy Court as an adversary proceeding. Leonard represented Knight in the adversary proceeding against his former clients, the debtors. Eventually, all parties stipulated that Yorkshire and TAGT were solvent and in no way in default. Accordingly, the Bankruptcy Court dismissed the petitions but reserved jurisdiction to consider motions for sanctions. The Luedtkes moved for sanctions against Knight and Leonard. Following a hearing during which the Court heard testimony from the parties and witnesses, the Bankruptcy Court granted their motion. The District Court affirmed. Knight and Leonard appeal that decision.

II

This appeal requires us to decide two related questions: first, whether the Bankruptcy Court erred in deciding to sanction Appellants for filing two bankruptcy petitions in bad faith; and second, whether the Bankruptcy Court

---

[1] Knight later admitted the Luedtkes exercised almost absolute authority over corporate affairs.

[2] The parties dispute the correctness of the certificate. We need not resolve the dispute.

erred in the amount of sanctions it imposed. We review a Bankruptcy Court's order imposing sanctions for abuse of discretion, In re First City of Bancorporation of Texas, Inc., 282 F.3d 864, 867 (5th Cir. 2002) (citations omitted), applying the same standards as did the District Court, In re Armstrong, 206 F.3d 465, 469 (5th Cir. 2000). A Bankruptcy Court does not abuse its discretion unless "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir. 1995) (citations omitted). We review findings of fact under the clearly erroneous standard and conclusions of law de novo. First City Banc., 282 F.3d at 867.

A

The Bankruptcy Court held, "[a]fter considering the testimony of the witnesses and considering the documentary evidence," that "the two petitions were filed in bad faith." Specifically, the Bankruptcy Court concluded that "the bankruptcy cases were filed when Knight got dissatisfied with his state law remedies and decided to inflict injury on the Luedtkes. Accordingly, the bankruptcy cases were filed with a bad motive and with no meaningful thought being given to the actual purposes of chapter 11 bankruptcy." Based on these findings, the Bankruptcy Court imposed sanctions against Knight and Leonard. The Bankruptcy Court identified two sources of its authority to impose sanctions on Appellants: its "inherent authority to regulate the practice of litigants and lawyers appearing before it[]" and FED. R. BANK. P. 9011(c).

Appellants raise three arguments in support of their contention that the Bankruptcy Court erred. Their arguments are confusing to say the least; none go to the issue of subjective bad faith, the basis of the Bankruptcy Court's order. First, Appellants contend that the Bankruptcy Court erred in holding that the reason they asserted for filing for bankruptcy was illegitimate. According to Appellants, they filed the bankruptcy petitions to comply with federal law

requiring them to report two felonies: bank fraud and selling uninspected meat.[3]
 Second, Appellants contend that the Bankruptcy Court's order rested on two
erroneous legal conclusions.  According to Appellants, the Bankruptcy Court
erroneously concluded that filing for bankruptcy would stop both the venue
hearing in the state court and the meeting at which the Luedtkes planned to
remove Knight from any position of authority at Yorkshire.  Third, Appellants
contend that the Bankruptcy Court relied on a finding that Knight lacked
authority to file for bankruptcy, and that its finding in that regard was
erroneous.[4]  All of Appellants' contentions lack merit.

It is well-settled that a federal court, acting under its inherent authority,
may impose sanctions against litigants or lawyers appearing before the court so
long as the court makes a specific finding that they engaged in bad faith conduct.
See Eliot v. Tilton, 64 F.3d 213, 217 (5th Cir. 1995) (citing Resolution Trust Corp.
v. Bright, 6 F.3d 336, 340 (5th Cir. 1993); In re Thalheim, 853 F.2d 383, 389 (5th
Cir. 1988)); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66 (1980).
In this case, following an extensive hearing in which the Bankruptcy Court
heard testimony from the parties and witnesses and made certain credibility
determinations, the Bankruptcy Court made specific findings that Appellants

---

[3] 18 U.S.C. § 4 provides:

> Misprision of felony.  Whoever, having knowledge of the actual
> commission of a felony cognizable by a court of the United States,
> conceals and does not as soon as possible make known the same
> to some judge or other person in civil or military authority under
> the United States, shall be fined under this title or imprisoned
> not more than three years, or both.

[4]  As to Knight, Appellants contend that he was represented by counsel and thus any
error in the determination that he had authority to file for bankruptcy was a legal one and
should be attributed to counsel, not Knight.  As to Leonard, Appellants argue that he
thoroughly researched the facts and the law and formed a non-frivolous legal conclusion that
Knight had authority to file for bankruptcy.  Moreover, Appellants contend that Knight, as
President, had authority to file for bankruptcy.

acted in bad faith:  Appellants filed the bankruptcy petitions "to inflict injury on the Luedtkes . . . with a bad motive and with no meaningful thought being given to the actual purposes of chapter 11 bankruptcy."

Appellants' contentions miss the point.  Indeed, even if they are correct))Knight had a legal duty to report two felonies; the bankruptcy would stop neither the venue hearing nor the meeting; and Knight had legal authority to file for bankruptcy))we would not disturb the Bankruptcy Court's decision.  In finding bad faith, the Bankruptcy Court saw these arguments for what they were:  before-or-after-the-fact attempts to cloak Appellants' bad faith conduct with legal arguments.  The point is that Appellants filed for bankruptcy with the subjective intent to harm the Luedtkes and that they actively concealed their efforts from the company and its creditors.  Whether and how Appellants could accomplish their goal is another question.[5]  We find it telling that for all Appellants' purported justifications, one is noticeably absent from the briefing in this Court:  that they filed for bankruptcy in the best interests of the company.

The Bankruptcy Court did not impose sanctions lightly.  It acted only after a hearing and after making the specific findings required by law.  Therefore, we hold that the Bankruptcy Court did not abuse its discretion in imposing sanctions against Appellants under its inherent authority.  Since we hold that the Bankruptcy Court did not abuse its discretion in imposing sanctions under its inherent authority, we need not decide whether sanctions also were appropriate under Fed. R. Bank. P. 9011(c).

B

In determining the appropriate sanctions against Knight and Leonard, the Bankruptcy Court first noted that it "should limit the sanction to what is

---

[5] At a minimum, they caused the Luedtkes to expend nearly $60,000 in legal fees.

sufficient to deter repetition of such conduct by others similarly situated." After reviewing sanctions imposed by other courts, the Bankruptcy Court determined that it should use the Luedtke's attorneys' fees as a starting point and then order additional sanctions, if necessary, to assure proper deterrence. The Bankruptcy Court determined that the Luedtke's attorneys' fees totaled approximately $60,000. Then, after considering the annual income and net worth of both Knight and Leonard along with their intentional and surreptitious conduct, the Bankruptcy Court ordered $50,000 in sanctions against Knight and $40,000 in sanctions against Leonard, with amounts in excess of attorneys' fees to be paid to the United States, including any insurance or indemnification payments that either Appellant received.

Appellants ask this Court to vacate the amount of sanctions. Knight contends that the Bankruptcy Court erred in determining the amount of sanctions because its determination rested on the erroneous conclusion that Knight was in the best position to inform Leonard that Knight lacked authority to file for bankruptcy. This contention goes more to the issue of whether sanctions should have been imposed rather than to the amount. Leonard contends that the Bankruptcy Court erred in determining the amount of sanctions because it failed to consider whether the Luedtkes mitigated their damages and because its findings that the amount of sanctions were appropriate to advance the goal of deterrence were erroneous. We disagree. Having reviewing the record, we believe that the Bankruptcy Court's order was well-founded. Accordingly, we reject Appellants' request to vacate the amount of sanctions imposed.

III

For the reasons set forth above, we AFFIRM the Final Judgment of the District Court, which AFFIRMED the Bankruptcy Court's order imposing sanctions on Appellants.