# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2018

Lyle W. Cayce
Clerk

No. 17-10481

In the Matter of:  GARY M. BEACH,

> Debtor

DEEPROCK VENTURE PARTNERS, L.P.,

> Appellant

v.

GARY M. BEACH; GENTRY BEACH; DIANE G. REED, Chapter 7 Trustee,

> Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-1552

Before STEWART, Chief Judge, and HAYNES and WILLETT, Circuit Judges.

PER CURIAM:*

　　This appeal arises from the bankruptcy of Gary M. Beach, a Dallas oil-and-gas businessman.  The bankruptcy Trustee and DeepRock Venture Partners, L.P., the largest unsecured creditor of Beach, filed an adversary

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10481

proceeding claiming that Beach and his son Gentry Beach (collectively, the "Beaches") fraudulently transferred assets to shield them from creditors. After court-ordered mediation, the Trustee and the Beaches agreed to settle the adversary proceeding, but DeepRock objected. The bankruptcy court approved the settlement, and the district court affirmed. On appeal, DeepRock argues the bankruptcy court abused its discretion in approving the settlement. We AFFIRM.

## I. Factual and Procedural Background

In 2005, Beach formed a partnership with DeepRock, a New York investment firm, to drill for oil. DeepRock provided the capital, and Beach managed the partnership as its CEO. The partnership soured, however, after several profitless years; Beach sued DeepRock to seize control of the partnership's assets, and DeepRock counterclaimed. A jury found in favor of DeepRock, and the court entered a judgment against Beach imposing more than $800,000 in damages. Some months later, in 2011, Beach filed for bankruptcy.

DeepRock filed a claim in Beach's bankruptcy case, as well as an adversary proceeding, alleging that Beach was not entitled to a discharge of his debts under 11 U.S.C. § 727(a)(2) because he fraudulently transferred assets. The bankruptcy Trustee initiated a separate adversary proceeding against the Beaches, seeking to avoid and recover the value of the same allegedly fraudulently transferred assets. The bankruptcy court subsequently allowed DeepRock to join the Trustee's adversary proceeding, and they filed an amended joint complaint (the "Complaint"), which is at the heart of this appeal.

The Complaint alleged that in 2010, amidst the original lawsuit between Beach and DeepRock, the Beaches fraudulently transferred assets from a family trust to shield them from Beach's creditors. Specifically, the Beaches allegedly took advantage of Beach's father, who had severe dementia, by

No. 17-10481

essentially fabricating his signature for documents that transferred assets from the family trust to a newly created trust (the "2010 Trust"). The 2010 Trust made the Beaches the trust's only beneficiaries and, unlike the family trust, had a spendthrift provision purporting to insulate Beach's interest in the trust from his creditors. The Complaint further alleged that the Beaches spent freely from the 2010 Trust and then drained it shortly before Beach filed for bankruptcy, namely by purchasing a home for more than $800,000 in the Highland Park neighborhood of Dallas (the "Highland Park Home"), in which Beach and his wife lived.

The Complaint, in turn, sought avoidance and recovery of the Beaches' alleged fraudulent transfers from the trusts under 11 U.S.C. § 548(a)(1)(A) and (e), § 550(a), and § 544(b) in combination with sections 24.005 and 24.008 of the Texas Uniform Fraudulent Transfer Act. It also sought the imposition of a constructive trust over the 2010 Trust's assets and connected assets. Finally, it sought a declaratory judgment that the Beaches self-settled the 2010 Trust, the trusts were Beach's alter egos, and the bankruptcy estate included Beach's interest in the 2010 Trust and connected assets.

The Beaches moved to dismiss. They argued that the Trustee and DeepRock lacked standing to challenge the 2010 Trust's validity, that any asset transfers were not fraudulent transfers, and that the Trustee was collaterally estopped from challenging the 2010 Trust due to earlier, related state court litigation.[1]

The bankruptcy court denied dismissal and ordered the parties into mediation. The parties attended a day of mediation in December 2015. No

---

[1] In the earlier, related state court litigation, other beneficiaries of the family trust challenged the validity of the 2010 Trust. The litigation ultimately settled.

No. 17-10481

settlement was reached by the day's end, but after DeepRock's representatives left, the Trustee reached an agreement with the Beaches (the "Settlement").

The final Settlement provided, in relevant part, as follows: (1) mutual releases of any claims between the parties and dismissal of the adversary proceeding; (2) payment of $1 million to the Trustee, using proceeds from the sale of the Highland Park Home; (3) waiver of Beach's discharge in bankruptcy under 11 U.S.C. § 727(a)(10), without admission of fault or wrongdoing; and (4) delivery to the Trustee of information regarding the finances and assets of another company involving Beach, Beach Petroleum LLC.

The Settlement further provided that if the Trustee determined that the 2010 Trust's interest in Beach Petroleum was of more than nominal or minimal value, then the parties would have good faith discussions as to that value and how to distribute it. Subsequently, the Trustee received and reviewed financial information relating to Beach Petroleum, and the parties agreed on an additional $15,000 payment to the bankruptcy estate, which came from the $21,000 left in Beach Petroleum's bank account as of the date of the Settlement.

Overall, DeepRock was entitled to approximately $775,000 of the $1,015,000 from the Settlement, reflecting between 92 to 93 percent of its initial claims against the bankruptcy estate. DeepRock had initially claimed approximately $822,713, but it amended its claim to approximately $2.5 million three days before the bankruptcy court's hearing on the Settlement. Additionally, because the Settlement provided for a waiver of Beach's discharge, DeepRock could pursue collection efforts on any unpaid amounts remaining after the Settlement's distribution to creditors.

DeepRock objected to the Settlement, raising arguments similar to what it has raised on appeal, namely that the Settlement did not maximize value for Beach's creditors. The bankruptcy court held a hearing over two days and

No. 17-10481

approved the Settlement.  DeepRock appealed to the district court, which affirmed.

## II.  Standard of Review

The bankruptcy court's approval of a settlement agreement, as affirmed by the district court, is reviewed for abuse of discretion.  *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  A trial court abuses its discretion when it makes an error of law or a clearly erroneous assessment of the evidence.  *Leonard v. Luedtke (In re Yorkshire LLC)*, 540 F.3d 328, 331 (5th Cir. 2008) (per curiam).  The bankruptcy court's conclusions of law are subject to *de novo* review, but its findings of fact may be reversed only if this court is "left with 'a firm and definite conviction that a mistake has been committed.'" *Foster Mortg.*, 68 F.3d at 917 (quoting *Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512, 514 (5th Cir. 1994)).

## III.  Discussion

A bankruptcy court may approve an adversary litigation settlement that is "fair and equitable and in the best interest of the estate."  *Foster Mortg.*, 68 F.3d at 917 & n.2; *see also* FED. R. BANKR. P. 9019(a).  We apply a three-part balancing test "with a focus on comparing 'the terms of the compromise with the likely rewards of litigation.'"  *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015) (quoting *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).

A bankruptcy court must evaluate: (1) the probability of success in litigating the adversary claim; (2) the complexity and likely duration of litigation; and (3) "all other factors bearing on the wisdom of the compromise." *Age. Ref.*, 801 F.3d at 540. The third prong's "other factors" include "(i) the best interests of the creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length

bargaining, and not of fraud or collusion." *Id.* (internal quotations omitted) (quoting *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. ex rel. Mabey (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997)). The bankruptcy court made findings showing its consideration of these factors, and we conclude that it did not abuse its discretion in doing so.

## A.  Probability of Success in Litigating Claims

 "[I]t is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *Cajun Elec.*, 119 F.3d at 356. Instead, the bankruptcy court "need only apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision."  *Id.* (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)).

The bankruptcy court concluded that if the parties litigated out the adversary proceeding's claims, the Trustee had a high probability of success in winning precisely what the Settlement provides.  But, the court concluded, there was a high degree of uncertainty as to whether the Trustee would win more than that.   These findings were not clearly erroneous given the complexity of the claims and defenses, which the bankruptcy court duly discussed.

DeepRock argues there was no uncertainty about the merits of the claims and therefore this factor is immaterial here.  It points to Beach's assertion of his Fifth Amendment right against self-incrimination in answering the Complaint, as well as the jury verdict against Beach in his earlier lawsuit with DeepRock and Beach's later criminal indictment for bankruptcy fraud.

We are unpersuaded.  DeepRock cites no authorities to support its view that courts need not weigh the uncertainties of litigation under such circumstances. Additionally, although Beach invoked the Fifth Amendment in answering the Complaint, the parties vigorously disputed whether Beach

would have done so at the Settlement hearing if he had been subpoenaed. It is therefore hardly clear that Beach would invoke the Fifth Amendment at trial. The Beaches' standing and estoppel arguments could also lead to outright dismissal. Finally, Beach's other legal troubles do not prove that the Beaches committed the fraudulent transfers alleged here.

## B. Complexity and Expense of Litigation

"We need not belabor this factor." *Cajun Elec.*, 119 F.3d at 357. The bankruptcy court concluded that litigation would entail a multi-week trial, which would not proceed for many months and which would cost hundreds of thousands of dollars in legal and expert witness fees. Again, these findings were not clearly erroneous.

The Complaint alleged that in order to defraud Beach's creditors, the Beaches essentially fabricated the signature of Beach's father multiple times while he had profound enough dementia that he could not engage in estate planning. The Beaches have "vehemently" disputed these allegations. At the settlement hearing, Gentry Beach testified, contrary to the Complaint, that Beach's father voluntarily chose to transfer the family trust's assets to protect them from his wife's family (the "Step Family").

It was undoubtedly within the bankruptcy court's discretion to conclude that these allegations would be complex and costly to litigate, involving significant trial and witness preparation. Moreover, as the bankruptcy court noted, Beach's bankruptcy case, in which DeepRock is the primary creditor, had already been "very contentious" and pending for four and a half years. The bankruptcy court could reasonably expect a similarly protracted battle if the parties litigated, rather than settled, these claims.

## C. Other Factors Bearing on the Wisdom of the Settlement

DeepRock argues the Settlement is not in the best interest of Beach's creditors because it fails to maximize the value of Beach Petroleum. Under the

No. 17-10481

Settlement, Beach Petroleum's value is assumed to be its remaining $21,000 in cash. Of that, the bankruptcy estate received $15,000.

The bankruptcy court concluded that Beach Petroleum's value was speculative at best. DeepRock challenges this conclusion, arguing the bankruptcy court lacked sufficient evidence to approve the Settlement as "fair and equitable." In particular, DeepRock argues the Trustee did not obtain an expert valuation of Beach Petroleum or otherwise conduct a rigorous analysis of its worth, and instead relied only on information from Gentry Beach.[2]

We conclude the bankruptcy court had sufficient evidence to determine that Beach Petroleum's value was speculative and, therefore, to approve the Settlement. Gentry Beach testified that Beach Petroleum's existing investments consist of agreements that have produced no income from oil or gas leases to date and which are uncertain to do so in the future. Under one agreement, for example, Beach Petroleum's interest may never be in the money because there must first be millions in revenue generated to recoup development costs—an uncertain prospect given relatively low oil prices.[3]

---

[2] DeepRock also argues the bankruptcy court erroneously rejected DeepRock's evidence showing that Beach Petroleum was worth more than its remaining cash. We disagree. DeepRock's evidence consisted of reports that were ostensibly created by a private third party, and which DeepRock downloaded from a Louisiana state database. The bankruptcy court excluded the reports on the ground that they lacked foundation and were not authenticated. DeepRock argues the reports are self-authenticating. But only *certified* copies of public records are self-authenticating. *See* FED. R. EVID. 902(4). A party may also produce evidence that a public record "was recorded or filed in a public office as authorized by law; or . . . from the office where items of this kind are kept." FED. R. EVID. 901(b)(7). The record does not show that DeepRock provided a certified copy of the reports or that it provided any other authenticating evidence. The bankruptcy court thus did not err in excluding them. *See Simmons v. Hoegh Lines*, 784 F.2d 1234, 1238 (5th Cir. 1986). Additionally, DeepRock failed to lay a foundation to admit the reports under an exception to the hearsay rule. *See* FED. R. EVID. 801, 803.

[3] DeepRock argues that, in concluding that Beach Petroleum had speculative value, the bankruptcy court improperly took judicial notice of certain headwinds facing the oil and gas industry. The bankruptcy court specifically stated that it would take judicial notice of "current oil and gas commodity prices, and the prices they have yielded for the past several

No. 17-10481

It was within the bankruptcy court's discretion to credit Gentry Beach's testimony, for which there is also supporting documentation in the record, and DeepRock provided no competent evidence to refute it. *See G.H. Leidenheimer Baking Co., v. Sharp (In re SGSM Acquisition Co., LLC)*, 439 F.3d 233, 239 (5th Cir. 2006); *Robert v. Dennis (In re Dennis)*, 330 F.3d 696, 701–02 (5th Cir. 2003); *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 309 (5th Cir. 2003). As the bankruptcy court also observed, Beach Petroleum generated only about $1 million in revenue over several years when oil prices were higher. By comparison, DeepRock had spent about $800,000 in legal fees on the adversary proceeding.

The record thus supports the bankruptcy court's conclusion that Beach Petroleum had only speculative worth and, in turn, that the Settlement was "fair and equitable" when considering the likely rewards, costs, and risks of litigation. *See Foster Mortg.*, 68 F.3d at 917. We also note that the bankruptcy court heard hours of testimony over two days, reviewed dozens of exhibits, and directly examined Gentry Beach. The record of the Settlement hearing reflects the bankruptcy court's significant engagement with the issues and facts in dispute before bringing to bear its "informed, independent judgment." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 299 (5th Cir. 1984) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968)).

DeepRock next argues that the Settlement understates damages. The Trustee calculated damages for the fraudulent transfers by calculating what Beach would have received from the family trust upon his father's death in

---

months." The bankruptcy court was within its discretion to take notice of such prices. *See* FED. R. EVID. 201(b)(2); *cf. Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 316 (5th Cir. 2008) (per curiam) ("We can, of course, take judicial notice of stock prices.").

2011, and which thus would have been available to creditors, if not for his allegedly transferring the money to the spendthrift 2010 Trust. Based on $1.7 million left in the family trust at the time of the alleged transfers, the Trustee calculated Beach would have received $658,100. The Trustee sought an additional $340,000 in attorneys' fees for the Trustee and DeepRock.

DeepRock argues that the Trustee wrongly used $1.7 million as the baseline. Instead, DeepRock argues the Trustee should have looked to the value of all the assets that would have been in the family trust if not for the Beaches already having drained it before transferring the balance to the 2010 Trust. DeepRock argues that those assets, when added to the $1.7 million baseline, total approximately $2.7 million.

Assuming, arguendo, that the allegedly dissipated assets would be recoverable as fraudulent transfers, we conclude that the bankruptcy court properly exercised its discretion in assessing the evidence as to any associated damages. *See SGSM*, 439 F.3d at 239. Gentry Beach testified at the Settlement hearing that the Step Family was responsible for taking a significant portion of the disputed amounts. Another significant portion, according to Gentry Beach, was never in the family trust and so would not have been among the assets allegedly transferred into the 2010 Trust to be shielded from creditors. We defer to the bankruptcy court's credibility determinations as to Gentry Beach's testimony; DeepRock does not point to any competent evidence in the record that requires us to find it not credible, nor does the record reflect any such evidence. *See Perry*, 345 F.3d at 309.

DeepRock also argues the Settlement is not in the best interests of Beach's creditors because it fails to seek recovery of profits and appreciation on the alleged fraudulently transferred assets. This includes the appreciation of the Highland Park Home and Beach Petroleum's purported $1 million in profits, which DeepRock alleges one or both of the Beaches dissipated. Again,

there is no abuse of discretion. *See* COLLIER ON BANKRUPTCY ¶ 550.02[3][a] (Richard Levin & Henry J. Sommer eds., 16th ed. 2017) (describing it as a thorny issue whether an estate should be entitled to an increase in the value of transferred property under 11 U.S.C. § 550(a)); Tex. Bus. & Com. Code § 24.009(c)(1) (providing that creditors may recover "the value of the asset transferred," which "must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment *as the equities may require*" (emphasis added)).

As to the Highland Park Home, the Settlement gives Beach's creditors a guaranteed $1,015,000, which is personally backstopped by Gentry Beach, even if the home sale fails to raise that amount. In exchange, the creditors give up a limited amount of potential upside should the home ultimately sell at its full list price of $1.5 million.[4] Comparing "the terms of the compromise with the likely rewards of litigation," *Age Ref.*, 801 F.3d at 540 (quoting *Jackson Brewing*, 624 F.2d at 602), we see no clear error, and DeepRock points to no controlling authority indicating that such an exchange is inherently unfair.

As to Beach Petroleum's purported dissipated profits, DeepRock appears to argue that the bankruptcy estate is entitled to the profits because the Beaches used fraudulently transferred assets to create or fund Beach Petroleum. The Beaches, however, dispute that allegation, and DeepRock

---

[4] DeepRock acknowledged at the Settlement hearing that, under one plausible theory of the case, the bankruptcy estate is entitled to only 55 percent of the Highland Park Home's value, because the home is technically an asset of the 2010 Trust, and Beach has only a 55 percent interest in its assets (Gentry Beach has a 45 percent interest). By this measure, if the Highland Park Home sold at its full list price of $1.5 million, less a 6 percent real estate commission, the bankruptcy estate would get approximately $775,500. By comparison, the Settlement calculates actual damages of $658,100 (not including $15,000 for Beach Petroleum, $2,000 in miscellany, and $340,000 in attorneys' fees).

again does not point to any evidence in the record supporting it.[5]  Thus, assuming, arguendo, that the purportedly dissipated profits would be recoverable, the bankruptcy court did not err on this point.

DeepRock lastly argues that the Settlement unfairly allows Gentry Beach to retain two disputed assets: (1) excess sale proceeds from the Highland Park Home (i.e., proceeds in excess of the Settlement amount); and (2) ownership of Beach Petroleum.  We disagree.  DeepRock's argument regarding the Highland Park Home's excess sale proceeds is a variant of its argument that the Settlement should have accounted for the home's appreciation.  We have already rejected this argument.

Regarding Beach Petroleum, we have already concluded that the bankruptcy court did not clearly err in determining that Beach Petroleum's value was speculative.  It also, therefore, did not abuse its discretion in approving a Settlement that exchanges an asset of speculative value for 30 cents on the dollar to creditors, as well as a waiver of discharge.  The bankruptcy court emphasized its need to weigh the overall costs and benefits of this exchange, and in doing so, it did not make any legal errors or clearly erroneous factual findings or assessments of the evidence.

## IV.  Conclusion

For the foregoing reasons, we AFFIRM the bankruptcy court's judgment approving the Settlement.

---

[5] Insofar as DeepRock advances some other theory of recovery, it has waived that argument due to inadequate briefing.  *See SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 778 n.7 (5th Cir. 2017).